UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:24-cv-777

SFR SERVICES, L.L.C.,

    Plaintiff,

CLASS REPRESENTATION

v.

DOCKSIDE AT VENTURA CONDOMINIUM ASSOCIATION, INC., individually and on behalf of all Owners of Units Located in the Dockside at Ventura Condominium Community,

    Defendants.
_____/

# COMPLAINT

Plaintiff, SFR Services, L.L.C. ("SFR" or "Plaintiff"), by its undersigned counsel, sues Defendants, Dockside at Ventura Condominium Association, Inc., individually and on behalf of all owners of units located in the Dockside at Ventura Condominium community ("Dockside" or "Defendant"), and alleges:

## INTRODUCTION

1. This is a case about the failure to pay SFR for work it performed to improve real property located at 2580 Woodgate Boulevard, Orlando, FL 32822 (the "Property"). Dockside failed to pay SFR $8,065,724.73 for services related to mitigation and repair of the Property for flood damage sustained from Hurricane Ian.

As a result, SFR commenced this action so that it can recover the money it is rightfully owed.

## JURISDICTION, PARTIES, AND VENUE

2. At all times material hereto, SFR was and is a Florida limited liability company duly registered and authorized to do business throughout the State of Florida, with its principal address located in Martin County, Florida. Plaintiff has one member, Ricky McGraw, a citizen of Puerto Rico. Ricky McGraw's domicile is in Dorado, Puerto Rico because he has a true, fixed permanent home, and principal establishment in Puerto Rico and to which he intends to return whenever he is absent from it.

3. Defendant Dockside is a Florida not-for-profit corporation and conducts business in Orange County, Florida. For subject matter jurisdiction purposes, Defendant's principal place of business is in Orange County, FL. Thus, Defendant is a citizen of Florida.

4. Upon information and belief, the Dockside Unit Owners reside and/or have their principal places of business in Orange County, Florida.

5. Venue is proper in the United States District Court for the Middle District of Florida under 28 U.S.C. § 1391(b)(2), because it is where the cause of action accrued, where the Property is located, and where many of the witnesses reside and/or do business.

6. This Court has subject matter jurisdiction under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, exclusive of fees, costs, and interest, and is between citizens of different states.

## GENERAL ALLEGATIONS

7. On January 3, 2023, Dockside and SFR executed an interior scope of work contract for four buildings at Dockside related to a Hurricane Ian flood claim (the "January Flood Claim Contract"). A true and correct copy of the January Flood Claim Contract is attached hereto as **Exhibit A.**

8. On September 5, 2023, Dockside and SFR signed an interior scope of work contract for the remaining 15 buildings at Dockside related to the flood claim (the "September Flood Claim Contract" and together with the "January Flood Claim Contract", the "Flood Claim Contracts"). A true and correct copy of the September Flood Claim Contract is attached hereto as **Exhibit B**, which incorporates the January Flood Claim Contract as well.

9. The Flood Claim Contracts consisted of work on the condominium units for all 19 buildings related to interior mitigation, interior rebuild, permitting, and change orders. The materials to be furnished and the nature of the work to be performed was listed in each of the above contracts. The total value of the Flood Claim Contracts was $26,789,742.70 for work to be performed concerning Dockside's Hurricane Ian flood claim. Pursuant to the Flood Claim Contracts, and

after certain payments were made to SFR as reflected therein, the balance owed as of August 31, 2023, was $18,278,238.04.

10.  Due to subsequent change orders that were required and approved by Dockside concerning the Flood Claim Contracts, the total balance for work completed increased to $19,523,687.85 (the "Increased Contract Price for Completed Work"). A summary of the itemized work completed on the flood claim that represents the Increased Contract Price for Completed Work, together with all payments SFR received to date (the "Summary Statement") is attached hereto as **Exhibit C**. The difference in the amounts between **Exhibit B** and **Exhibit C** represents work that has not been commenced to date due to Dockside recently terminating SFR, which is explained below.

11.  On October 13, 2023, Dockside and SFR signed a Letter of Protection regarding the flood claim (the "Flood Claim LOP"). A true and correct copy of the Flood Claim LOP is attached hereto as **Exhibit D**.

12.  From December 2022 – December 2023, SFR received seven payments from Dockside for work it had completed regarding the Hurricane Ian flood claim in the total amount of $9,300,000.00. After SFR reduced the Increased Contract Price for Completed Work to account for payments directly to one of SFR's subcontractors in the amount of $4,204,900.41 (as reflected in the Summary Statement, attached hereto as **Exhibit C**), the balance owed to SFR regarding its mitigation and repair services for the flood claim was $6,018,787.44.

13. The Summary Statement lists work completed by SFR related to interior mitigation for Buildings 1-19, interior rebuild for Buildings 1-12, and, as applicable, permitting and change order fees for Buildings 1-19. The materials furnished for the completed work was set forth in the Flood Claim Contracts and are also referenced by invoice number in the Summary Statement, all of which was previously provided to Dockside.

14. Based on the Summary Statement, on or about December 28, 2023, SFR sent Dockside an invoice for interior mitigation work completed for buildings 1-19 and interior rebuild work completed on buildings 1-12 pursuant to the Flood Claim Contracts ("Flood Invoice No.1"). The amount owed under Flood Invoice No. 1 is $5,005,520.42. A true and correct copy of Flood Invoice No. 1 is attached hereto as **Exhibit E**.

15. On or about January 2, 2024, SFR sent Dockside an additional invoice for all of the required change orders and permits that were approved by Dockside ("Flood Invoice No. 2" and together with "Flood Invoice No. 1", the "Flood Invoices"). The amount owed under Flood Invoice No. 2 is $1,013,267.02. A true and correct copy of Flood Invoice No. 2 is attached hereto as **Exhibit F**. Pursuant to the Flood Invoices, Dockside owes SFR $6,018,787.44 which is identical to the amount listed in the above Summary Statement SFR sent to Dockside.

16. After SFR sent the Flood Invoices to Dockside, SFR received invoices from one of its subcontracts for work performed pursuant to another change order

approved by Dockside. The invoices, plus SFR's overhead and profit listed in the Revised Summary Statement, reflect an additional $26,519.22 owed by Dockside under the Flood Claim Contracts. These invoices, together with the Revised Summary Statement are attached hereto as **Composite Exhibit G**.

17. On January 8, 2024, Dockside filed a Complaint against SFR and other entities, which constructively cancelled the Flood Claim LOP and constructively terminated SFR from completing any further work at Dockside related to its contracts for the flood claim.

18. Based on the Flood Claim LOP, the Flood Claim Contracts, Dockside's cancellation of the Flood Claim LOP, and Dockside's cancellation of the interior rebuilds for Buildings 13-19 pursuant to the Flood Claim Contracts, Dockside owes SFR 25% of the estimated costs for these rebuilds, which is $2,020,418.07 (the "Flood Claim LOP Cancellation"). A true and correct copy of the invoice for the Flood Claim LOP Cancellation is attached hereto as **Exhibit H**.

19. On March 22, 2024, SFR recorded a Claim of Lien on the Property in the amount of $6,018,787.44, which includes the amounts owed under Flood Invoice No. 1 and Flood Invoice No. 2. A true and correct copy of the Claim of Lien is attached hereto as **Exhibit I**. The Claim of Lien contains the legal description of the Property and all other requirements pursuant to Chapter 713 of the Florida Statutes.

20. The Claim of Lien does not reflect the additional $26,519.22 owed by Dockside under the Flood Claim Contracts that SFR became aware of after it initially

sent the Flood Invoices to Dockside. The additional amount is reflected in the above Revised Summary Statement, which details Dockside owes SFR $6,045,306.66 for work completed related to the flood claim.

21. In total and including the Flood Claim LOP, Dockside owes SFR $8,065,724.73.

22. All applicable conditions precedent to the filing of this lawsuit have been performed, waived, excused, or satisfied. SFR retained the undersigned counsel to represent its interests in connection with the above-captioned case and is obligated to pay undersigned counsel reasonable attorneys' fees and costs for services rendered.

## CLASS REPRESENTATION ALLEGATIONS

23. Plaintiff realleges Paragraphs 1 through 22 above as if set forth fully herein.

24. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, SFR also brings claims against Dockside as a class action Defendant on behalf of all Unit Owners in the Dockside community, all of whom are responsible for their proportionate share of common expenses, which represent the work performed by SFR pursuant to the Hurricane Ian Flood Claim as set forth above. Specifically, Plaintiff seeks to have Dockside represent the following ("the Class" or "Class Members"):

> All persons and/or entities that own units at Dockside who are responsible for their proportionate share of common expenses, which constitute the work performed by SFR pursuant to the Hurricane Ian Flood Claim.

The class definition is subject to amendment as appropriate.

25. There are approximately two-hundred ninety-three (293) Unit Owners at Dockside, which comprise of business entities and natural persons. The entire roster of Unit Owners can be identified through Dockside's records.

26. The number of class members is so numerous, and the value of SFR's claim against any particular Unit Owner regarding the proportionate share of common expenses owed under SFR's Claim of Lien makes joinder of all class members impracticable or impossible.

27. Whether and to what extent SFR is entitled to foreclose its Claim of Lien against Dockside and, by extension, the Unit Owners' pro rata responsibility pursuant to the amount owed under the Claim of Lien involve questions of law and/or fact common to the class. These include at least the following:

    (a) Whether Dockside incurred debt to SFR for the benefit of all Unit Owners pursuant to the Flood Claim Contracts;

    (b) Whether Dockside failed to pay the total amount owed under the Flood Claim Contracts;

    (c) Whether Dockside breached the Flood Claim Contracts;

    (d) Whether SFR is entitled to foreclose its Claim of Lien;

      (e)      Whether Dockside and the Unit Owners are liable for damages, and the amount of such damages;

      (f)      Whether Dockside's conduct is the proximate cause of such damages; and

      (g)      Whether SFR is entitled to any other remedy.

28. The defenses asserted by Dockside in its representative capacity to SFR's claim to foreclose its Claim of Lien will undoubtedly involve the same defenses any particular Unit Owner would raise in connection with the factual and/or legal issues in this case. SFR has been injured by Dockside and the Class Members in the same manner by their collective uniform misconduct – failing to pay the total amount owed to SFR for work performed and by terminating SFR as set forth in great detail above.

29. Dockside shares the above facts and applicable legal defenses and/or questions with all putative Class Members. Further, a sufficient relationship exists between Dockside and the Class Members' conduct and the damages sustained by SFR.

30. Since Dockside owes a fiduciary duty to its Unit Owners as a matter of law, Dockside will fairly and adequately protect the interests of the class. Dockside, in its representative capacity on behalf of all Unit Owners that owe SFR the total amount due, will fairly and adequately protect the interests of putative Class Members. Dockside's interests and the interests of the Class Members are the same,

and Dockside will defend this action. Dockside is familiar with the facts of this case, as well as the essential issues involved.

31. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members' claims is impracticable or impossible for at least the following reasons:

(a) Dockside, in its representative capacity to defend SFR's claim for foreclosure of its Claim of Lien, involves questions of law and/or fact that predominate over questions of law or fact affecting only individual Class Members;

(b) Absent a Class, SFR could not efficiently foreclose its Claim of Lien and would continue to suffer damage and Dockside's violations of law will continue;

(c) Given the size of individual Class Members' claims, few (if any) putative Class Members could afford to or would seek legal redress individually for the wrongs Dockside committed and continues to commit against SFR. Absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

(d) Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, while also increasing the delay and expense to all parties and the courts. Comparatively, the class action device provides economies of scale and allows Class Members' defense of claims to be comprehensively administered and uniformly adjudicated in a single proceeding;

(e) When the liability of Dockside, in its representative capacity, has been adjudicated, SFR's foreclosure

    claim can be administered efficiently and determined uniformly by the Court;

(f)  No difficulty impedes this action's management by the Court as a class action, which is the best available means by which SFR can seek redress for the damages caused to it by the uniform misconduct of Dockside in its representative capacity;

(g)  The litigation and trial of SFR claims and Dockside's defenses as the representative of the Class Members are manageable;

(h)  Because SFR seeks to foreclose its Claim of Lien against the Unit Owners, the prosecution of separate actions against individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members if individual lawsuits were commenced, and establishing incompatible standards of conduct for each. Currently, Dockside refuses to pay SFR their proportionate share of the common expenses, which constitute the work performed by SFR. The misconduct discussed in great detail above, which affects Dockside and the Class Members the same, and, upon information and belief, the misconduct has occurred for a significant period of time. Additionally, bringing individual claims would burden the courts and result in an inefficient method of resolving this action. As a practical matter, adjudications with respect to individual Class Members would be dispositive of the interests of other Class Members who are not parties to the adjudication, and would impair or impede their ability to protect their respective interests. Consequently, class treatment is a superior method for resolution of the issues in this case;

(i)  The Class Members' interests in individually controlling the defense of separate actions is minimal to non-existent;

  (j) No litigation has been commenced by Dockside in a representative capacity concerning this controversy; and

  (k) Dockside has demonstrated a willingness to concentrate litigation against SFR in federal court.

## COUNT I
## FORECLOSURE OF CLAIM OF LIEN AS TO THE PROPERTY
**(Against Dockside, in its representative capacity on behalf of all Unit Owners)**

32. SFR realleges Paragraphs 1 through 31 above as if set forth fully herein.

33. This is an action to foreclose SFR's Claim of Lien.

34. Pursuant to the Flood Claim Contracts, Dockside agreed to pay SFR for all services and work rendered to mitigate and repair damage to the Property on behalf of Dockside and the Unit Owners.

35. As set forth in the Claim of Lien, SFR provided its services under the Flood Claim Contracts. The work was requested, approved, and accepted by Dockside on behalf of all Unit Owners.

36. SFR provided notice of its Claim of Lien to Dockside around March 26, 2024. A copy of this notice is attached hereto as **Exhibit J**. Subsequently, SFR attempted to provide notice to the Unit Owners, but all or substantially all of the notices were returned to SFR's counsel as undeliverable and/or refused. Upon information and belief, many of the Unit Owners no longer reside in their Units due to the extensive Hurricane Ian damage. Since Dockside, in its representative

capacity, owes a fiduciary duty to the Unit Owners as a matter of law, SFR gave sufficient notice to Dockside of SFR's Claim of Lien.

37. On February 29, 2024 and as part of SFR's application for payment in the amount of $6,018,787.44, SFR executed its Final Payment Affidavit.

38. On March 12, 2024, SFR sent Dockside a letter enclosing its Final Payment Affidavit and Statement of Account to Dockside. A copy of the correspondence with the enclosures is attached hereto as **Exhibit K**[1].

39. SFR timely filed this action within one (1) year of recording its Claim of Lien.

40. The amount of $6,018,787.44 presently remains due and owing to SFR. Dockside, on behalf of all Unit Owners, failed and refused to pay the outstanding sum due to SFR, despite demand.

WHEREFORE, SFR requests that this Court enter a final judgment against Dockside, in its representative capacity on behalf of all Unit Owners as follows: (i) SFR has a valid lien against the Property in the amount of $6,018,787.44, plus prejudgment interest, costs, and attorneys' fees pursuant to Section 713.29 of the Florida Statutes; (ii) SFR's lien is superior to any right, title, interest, or lien of Dockside or the Unit Owners; (iii) the Property shall be sold at a judicial sale pursuant to applicable Florida law in the event of a default in payment of the amount due to SFR, with the proceeds of such sale used to satisfy the sums due and owing

---

[1] The exhibits to the Statement of Account have been omitted to avoid duplication.

to SFR; (iv) should a deficiency occur after application of the proceeds of the sale to the outstanding indebtedness owed to SFR, a deficiency judgment entered in favor of SFR; and (v) all other relief that this Honorable Court may deem just and proper.

### COUNT II
### BREACH OF CONTRACT AS TO THE FLOOD CLAIM CONTRACTS
**(Against Dockside, individually)**

41. SFR realleges Paragraphs 1 through 22 above as if set forth fully herein.

42. This is an action for breach of the Flood Claim Contracts between Dockside and SFR.

43. Dockside breached the Flood Claim Contracts by failing to pay SFR the amount of $6,045,306.66. This amount represents money due and owing to SFR for work, labor, and services related to mitigation and repair of damage at the Property pursuant to the Flood Claim Contracts. This amount includes the change orders that SFR received on or around February 22, 2024, and the revised total balance due under the Flood Claim Contracts.

44. Despite demand, Dockside failed and refused to pay SFR the outstanding indebtedness owed pursuant to the Flood Claim Contracts.

45. As a direct and proximate result of the breach of contract by Dockside, SFR has been damaged.

WHEREFORE, SFR demands judgment against Dockside for damages, prejudgment interest, costs, and all other relief that this Honorable Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED-IN-FACT CONTRACT
## AS TO THE FLOOD CLAIM CONTRACTS
### (Against Dockside, individually)

46. SFR realleges Paragraphs 1 through 22 above as if set forth fully herein.

47. This is an action for breach of an implied-in-fact contract against Dockside and is pled in the alternative to Count II.

48. The conduct of Dockside and SFR, including their spoken and written words, the relationship of the parties, and the circumstances created a contract. Dockside agreed to pay SFR for all services, work, and labor rendered.

49. The conduct of both parties was intentional, and each knew, or under the circumstances should have known, that the other party understood the conduct as creating a contract.

50. Dockside breached the agreement by failing to pay SFR the outstanding amount of $6,045,306.66 for services, work, and labor SFR rendered to Dockside for the benefit of the Unit Owners.

51. This amount includes the change orders that SFR received on or around February 22, 2024, which is set forth in the revised total balance due under the Flood Claim Contracts.

52. As a direct and proximate result of the material breach by Dockside, SFR has been damaged.

WHEREFORE, SFR demands judgment against Dockside for damages, prejudgment interest, costs, and all other relief that this Honorable Court may deem just and proper.

## COUNT IV
## BREACH OF CONTRACT IMPLIED-IN-LAW/UNJUST ENRICHMENT AS TO THE FLOOD CLAIM CONTRACTS
**(Against Dockside, individually)**

53. SFR realleges Paragraphs 1 through 22 above as if set forth fully herein.

54. This is an action for unjust enrichment against Dockside, and is pled in the alternative to Counts II and III.

55. SFR conferred a benefit on Dockside and its Unit Owners in the form of the services and labor rendered with respect to mitigating and repairing flood damage on the Property due to Hurricane Ian. Upon information and belief, Dockside paid a portion of the money owed to SFR for its services and labor related to mitigating and repairing flood damage.

56. Dockside and the Unit Owners had knowledge of, voluntarily accepted, and retained the benefit conferred by SFR.

57. The circumstances are such that Dockside should, in all fairness, be required to pay SFR for the benefit SFR conferred regarding the services and labor rendered with respect to mitigating and repairing flood damage at the Property.

58. Dockside has been unjustly enriched at SFR's expense.

59. SFR lacks an adequate remedy at law.

60. As a direct and proximate result of the unjust enrichment of Dockside, SFR has been damaged.

WHEREFORE, SFR demands judgment against Dockside for damages, pre-judgment interest, costs, and all other relief that the Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT AS TO THE FLOOD CLAIM LOP
### (Against Dockside, individually)

61. SFR realleges Paragraphs 1 through 22 above as if set forth fully herein.

62. This is an action for breach of the Flood Claim LOP between SFR and Dockside.

63. Dockside breached the Flood Claim LOP by failing to pay SFR the Flood Claim LOP Cancellation of $2,020,418.07 when it constructively terminated the Flood Claim LOP and the corresponding Flood Claim Contracts. This amount represents money due and owing to SFR for 25% of the estimated cost of mitigation and repairs pursuant to the Flood Claim LOP.

64. Despite demand, Dockside and its Unit Owners failed and refused to pay SFR the outstanding indebtedness owed pursuant to the Flood Claim LOP.

65. As a direct and proximate result of the breach of contract of Dockside, SFR has been damaged.

WHEREFORE, SFR demands judgment against Dockside for damages, pre-judgment interest, costs, attorneys' fees pursuant to the Flood Claim LOP, and all other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all Counts so triable.

Dated: April 25, 2024.

          **SHAPIRO BLASI WASSERMAN & HERMANN PA**
          *Attorneys for Plaintiff*
          7777 Glades Road, Suite 400
          Boca Raton, Florida 33434
          T: (561) 477-7800 ‖ F: (561) 477-7722
          jalper@sbwh.law
          bpepper@sbwh.law
          ecaruso@sbwh.law
          floridaservice@sbwh.law

          By:   */s/ Josuha B. Alper*
          Joshua B. Alper, Esq.
          Fla. Bar No. 059875
          Bradley Pepper, Esq.
          Florida Bar No. 051387